MICHAEL TERRY RIGGS *v.* STATE OF INDIANA.

[No. 774S138. Filed March 3, 1976.]

264

*Robert R. Riggle,* of Jeffersonville, for appellant.

*Theodore L. Sendak,* Attorney General, *James N. Shumacker,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Michael Terry Riggs, was convicted on January 28, 1974, of the first degree murder of one Larry Gillespie. Sentenced to life imprisonment on February 14, 1974, the Appellant filed a Motion to Correct Errors with the trial court on April 3, 1974. It is from the overruling of this motion on April 29, 1974, that the Appellant now presents this appeal.

The evidence at trial revealed that the body of the victim was discovered by an officer of the Indiana State Police on April 3, 1974. The officer had been directed to the Clark County mobile home of the victim to investigate a shooting and soon called for investigative assistance. Photographs of the scene were taken, physical evidence was seized, and a plaster imprint of a footprint found at the scene was cast. This imprint was found to match that of a boot found in a later search of the Appellant's hotel room.

That same day a Sharon Lay telephoned police authorities and reported that the Appellant had called her and had admitted killing Gillespie. Police proceeded to Lay's home for further information. It was learned that the Appellant had repeatedly threatened to kill the deceased because he had been seeing a Sharon Fleming. The Appellant had married Fleming only to have her leave him when she discovered he was already married. Lay also informed police that she believed the Appellant could be found in Louisville, Kentucky. Officers then placed a call to authorities in that city.

The Louisville police were thus informed that the Appellant

was a murder suspect when they received a phone call from him during the late morning hours of April 3. The Appellant had been serving as an informant for Louisville authorities following his arrest on a number of armed robbery charges. The Appellant spoke to a Detective Dobbs and said he was coming to see him.

When the Appellant arrived to see Detective Dobbs, four other police officers were also there to receive him—Captain Hogan and Policewoman Green of the Louisville police, Sergeant Technician Mead and Detective Sergeant Hays of the Indiana State Police. Hays brought a warrant for the Appellant's arrest. The Appellant was advised of his rights and signed forms waiving extradition and consenting to a search of his truck.

The Appellant was taken to the office of the prosecutor in Jeffersonville, Indiana, shortly after his waiver of extradition. Before departing for Indiana, the Appellant confessed to police that he had killed Gillespie. He repeated this confession to the prosecutor in Jeffersonville. The Appellant challenges the admissibility of these statements in this appeal. Corroborating them was the testimony of Sharon Lay's son, Carl D. Ferguson, to the effect that he had on April 2 observed a shotgun in the Appellant's truck. He was grabbed by the Appellant and told that if he told anyone about the shotgun the Appellant would kill him and his family.

## I.

The Appellant's first contention of error is that the evidence at trial was insufficient to warrant a finding by the jury that the Appellant was sane on the date of the alleged offense. The Appellant entered a plea of not guilty by reason of insanity and the burden of proving sanity beyond a reasonable doubt accordingly was placed on the state. *Johnson* v. *State*, (1970) 255 Ind. 324, 264 N.E.2d 57. Our standard of review on whether this burden is met is well-settled:

"We have recently reiterated that the question of insanity is a question of fact not unlike other factual issues, which are to be decided by the trier of fact. Whenever such a factual question is appealed, this Court does not weigh the evidence nor judge the credibility of witnesses. We look to the evidence on the issue most favorable to the state and the reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support the decision of the trier of fact, the decision will be affirmed. Dragon v. State, (1974) 262 Ind. 394, 316 N.E.2d 827; Moore v. State, (1973) 260 Ind. 154, 293 N.E.2d 28; Majors v. State, (1974) 160 Ind. App. 124, 310 N.E.2d 283." Blake v. State, (1975) 262 Ind. 659, 323 N.E.2d 227.

The evidence here is sufficient to sustain the jury's verdict. Lay testimony established that the Appellant was "cool" and "calm" in his recitation of the details of the crime on April 3, 1973, the day of the crime. Police officers testified that the Appellant conducted himself on April 3, 1973, as would a normal man. Testimony regarding the Appellant's previous threats against the deceased revealed that the Appellant had said he would "get off" by pleading temporary insanity.

Four physicians were called by the trial court to testify regarding the Appellant's sanity. One physician would not speculate about the day of the crime, though he was of the opinion that the Appellant was sane on the day of his examination. The other three physicians were all of the opinion that the Appellant was not legally insane on or about the day of the crime. Only the psychiatrist called by the Appellant to testify was of the opinion that the Appellant was legally insane on the day of the crime.

The Appellant correctly points out that expert testimony is not conclusive upon the issue of a criminal defendant's sanity. Fitch v. State, (1974) 160 Ind. App. 697, 313 N.E.2d 548 and cases cited therein. The Appellant combines this with the fact that the prosecution presented no expert witnesses testifying that the Appellant was not legally insane to somehow conclude that the evidence of sanity was not sufficient. This argument is without merit.

"The jury had the right to accept any one of the statements by the psychiatrists or any part of them, or to reject them all, where there was contradictory evidence, and to weigh all the facts in the case on the issue of insanity." *Johnson* v. *State,* (1970) 255 Ind. 324 at 328, 264 N.E.2d 57 at 59. The state was under no duty to present its own expert witnesses. Indeed, lay testimony and experts called by the court made such a presentation unnecessary.

## II.

The Appellant's second contention is that the trial court erred in denying the Appellant's request to challenge a prospective juror peremptorily and in overruling the Appellant's challenge of that juror for cause. The Appellant's claim to a peremptory challenge here is based on Ind. Code § 35-1-30-2 (Burns 1975) which provides:

*"Peremptory challenges by accused.*—In prosecutions for capital offenses, the defendant may challenge, peremptorily, twenty [20] jurors; in prosecutions for offenses punishable by imprisonment in the state prison, ten [10] jurors; in other prosecutions, three [3] jurors. When several defendants are tried together, they must join in their challenges."

The trial court found that the Appellant had already exercised ten peremptory challenges when the juror in question was challenged. Because *Furman* v. *Georgia,* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 and *Adams* v. *State,* (1972) 259 Ind. 164, 284 N.E.2d 757, had at the time eliminated the possibility of a death penalty for the Appellant, the trial court ruled that the Appellant was not entitled to the twenty peremptory challenges possible when a prosecution is for a capital offense. This conclusion was correct.

In *Martin* v. *State,* (1974) 262 Ind. 232, 314 N.E.2d 60, we reiterated the interpretation of "capital offense" as referring to crimes where there is a possibility of the imposition

of death as a punishment. We concluded that this interpretation and the *Furman* and *Adams* decisions had the following effect on a defendant's peremptory challenges:

"Once again, of course, this requires us to apply an interpretation to statutory language which became open to interpretation only because of subsequent judicial decisions on unrelated matters, rather than legislative action. It is apparent that here the legislative decision to double the number of preemptory [sic] challenges is based on the nature of the punishment to be inflicted rather than the type of crime charged. Unlike the juvenile statute this is not an attempt to allocate the jurisdiction of offenses among court systems, thus presupposing a certain stability in interpretation, but is a safeguard for a defendant faced with choosing a panel which could conceivably impose the ultimate penalty upon him. It is clear that the capital nature of the punishment calls for an increase in the challenges, and where there would be no possibility of the imposition of that penalty, but only 'imprisonment in the state prison' as in this case, the Legislature intended to afford defendants ten preemptory [sic] challenges. We hold that the trial court therefore correctly denied appellants' motions." 314 N.E. 2d at 68.

The Appellant exercised all of his peremptory challenges and could challenge the prospective juror in question only for cause. He did so and was overruled. The Appellant has presented portions of voir dire examination of that venireman in support of his contention that this overruling was erroneous. These excerpts apparently purport to show that the prospective juror was hostile to or confused about the idea of temporary insanity. What it shows is that the prospective juror had doubts about the concept of temporary insanity. However, he stated that he would be willing to put his doubts aside in the face of evidence. In response to questions put to him by the trial court, the prospective juror stated that he had not formed an opinion as to the guilt or innocence of the accused, that he would render a fair and impartial verdict upon the law and evidence presented in court, and that he would listen to and follow the instructions of the court with regard to the law.

The question of the competency of a juror, upon a challenge for cause, is within the trial court's sound discretion. *Click* v. *State*, (1950) 228 Ind. 644, 94 N.E.2d 919. The trial court did not abuse its discretion in this case.

### III.

The Appellant next contends that the trial court erroneously admitted into evidence statements by the Appellant made to police in Louisville and to the prosecutor in Jeffersonville. It is the Appellant's contention that these statements were not voluntarily given. (It should be noted that the admissibility of testimony regarding the Appellant's confession by phone to Sharon Lay is not put in issue here.)

The admissibility of these oral confessions was argued before the trial court in a hearing not in the presence of the jury. Testimony revealed that the Appellant was fully advised of his rights by police in Louisville and that the Appellant acknowledged that he understood those rights. When the Appellant was informed of the crime of which he was accused, he indicated he did not want to talk about it. He was not questioned. While police were preparing to take the Appellant back to Indiana, however, the Appellant volunteered a confession. Detective Dobbs testified: "He stated that because I didn't advise him of his constitutional rights he would tell me exactly what happened and he did."

When the Appellant arrived at the prosecutor's office in Jeffersonville, he was again advised of his rights. He was told the interview was to be tape recorded and indicated he did not object. The Appellant was specifically advised again of his right to counsel and his right to stop the interview at any time to ask for counsel. The Appellant stated that he had previously been advised of his rights in Louisville and that he understood them. At no time during the ensuing confession did the Appellant request counsel.

Against testimony of the various participants of the above events the trial court was presented with testimony of the

Appellant that he did not realize he had the right to an attorney, that he had been told police had the privilege of talking to him first, that they put words in his mouth to get a confession.

This court will not disturb a trial court's ruling on the admissibility of a confession when that ruling is based on substantial, though conflicting, evidence. *Rogers* v. *State*, (1974) 262 Ind. 315, 315 N.E.2d 707; *Cooper* v. *State*, (1974) 261 Ind. 659, 309 N.E.2d 807. We can find no error in the trial court's determination here.

## IV.

The Appellant in his final contentions groups five alleged errors for the purpose of argument. Only one issue is presented with sufficient argument to permit us to address it. That contention is that it was error for the trial court to admit into evidence testimony concerning prior armed robberies the Appellant allegedly committed. "We have held on numerous occasions that when the Appellant enters a plea of not guilty by reason of insanity, he opens wide the door to all evidence relating to his past behavior and his environment including prior commission of crimes." *Stamper* v. *State*, (1973) 260 Ind. 211 at 216, 294 N.E.2d 609 at 612; *Barnes* v. *State*, (1975) 263 Ind. 320, 330 N.E.2d 743. The Appellant's contention here is without merit.

The Appellant presents four other issues in his final group of contentions: that State's Exhibit No. 11, shotgun wadding taken from the body of the deceased, was improperly admitted for failure to show chain of custody; that certain rebuttal testimony was improperly admitted; that State's Exhibits Nos. 6, 10, 14, and 17 were improperly admitted; that the trial court erred in compelling the Appellant to undergo a neurological examination. The presentation of these issues in the brief of the Appellant is inadequate.

Ind. R. Ap. P. 8.3 (A) (7) provides:

"An argument. Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto. If substantially the same question is raised by two or more errors alleged in the motion to correct errors, they may be grouped and supported by one argument. The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

The Appellant's brief on these issues presents us with assertions of error and citations of authority of questionable applicability. No reasoning is presented in the Appellant's argument to relate the facts of this case to the assertions of error or to the authorities presented. No prejudice to the Appellant is shown. No references to the record are included. We nevertheless have reviewed the record and pertinent authorities and find no error.

Finding no error, we affirm the decision of the trial court below.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 342 N.E.2d 838.