Eugene Keith SULIE, Petitioner-Appellant,

v.

Jack DUCKWORTH, et al., Respondents-Appellees.

No. 81-2589.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1982.

Decided Sept. 23, 1982.

Rehearing En Banc Denied Oct. 21, 1982.

Allen Kamp, The John Marshall Law School, Chicago, Ill., for petitioner-appellant.

Counsel for respondent waived oral argument.

Before CUDAHY, ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Eugene Sulie was convicted in an Indiana state court of first-degree murder and sentenced to life imprisonment. After exhausting his state remedies, see *Sulie v. State,* 269 Ind. 204, 379 N.E.2d 455 (1978), he filed a petition for federal habeas corpus. It was denied and he has appealed. The only question presented to us is whether Sulie was deprived of his liberty without due process of law because the officer who questioned him while he was in custody after his arrest was allowed to testify that Sulie asked to see an attorney. This evidence was used to show that Sulie was sane when he killed his victim.

The question whether it is a violation of a criminal defendant's constitutional rights to testify that he asked to speak to a lawyer when he was interrogated arose in *Jacks v. Duckworth,* 651 F.2d 480, 482–83 (7th Cir. 1981), and this court held that it was not. But the court's opinion lays heavy emphasis on the harmlessness of the alleged error in the circumstances of that case, and we are less certain that if there was error here it was harmless. We shall therefore go beyond a simple citation of *Jacks.*

*Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966), held that "the right to have counsel present at [a custodial] interrogation is indispensable to the protection of the Fifth Amendment privilege" to remain silent during such an interrogation. Sulie argues that the right to have counsel present during an interrogation would be inhibited if the person being interrogated knew that an attempt to exercise that right could be used in his criminal trial as evidence of sanity. Evidence of his silence would not be admissible against him in his criminal trial. See *Miranda, supra,* 384 U.S. at 468 n. 37, 86 S.Ct. at 1624 n. 37; *Doyle v. Ohio,* 426 U.S.

610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). No more—Sulie argues—should his request for a lawyer be admissible.

■ But we do not find the analogy compelling. Because jurors are quite likely to infer guilt from a defendant's refusal to give a statement to the police, the admissibility of such a refusal in evidence against the defendant would be a substantial deterrent to the exercise of his constitutional right to remain silent during a custodial interrogation. The deterrent effect in this case is more tenuous. The ultimate constitutional right involved in this case as in *Miranda* is the right to remain silent; it is not the right to have counsel. That right, which derives from the Sixth Amendment and is applied to the states through the due process clause of the Fourteenth Amendment, see *Gideon v. Wainwright,* 372 U.S. 335, 342–43, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799 (1963), does not attach until a criminal prosecution has been commenced, as by the filing of a formal charge. *Moore v. Illinois,* 434 U.S. 220, 226–27, 98 S.Ct. 458, 463–64, 54 L.Ed.2d 424 (1977). Mere interrogation of a suspect before the filing of any charge, as in this case, does not bring the right into play. *Jacks v. Duckworth, supra,* 651 F.2d at 483. It is true that some cases decided since *Moore* hold, but without citing *Moore* or elaborating the basis of their holding, that the Sixth Amendment right to counsel attaches prior to the filing of any charge. See, e.g., *United States v. McDonald,* 620 F.2d 559, 564 (5th Cir. 1980). But these decisions cannot be regarded as authoritative, in light of *Moore*; and they are certainly not the law of this circuit, in light of *Jacks.*

■■ The right to have counsel present at a custodial interrogation is, therefore, as the passage quoted earlier from *Miranda* makes clear, merely ancillary or supplementary to the right to remain silent, which derives from the Fifth Amendment's self-incrimination clause. Like the exclusionary rule in search and seizure cases, the *Miranda* right to counsel is not directly conferred by the Constitution but rather is a judge-made enforcement device for assuring that an express constitutional right, the Fifth Amendment right against compulsory self-incrimination, is not infringed.

In deciding whether to apply this enforcement device in the present case, we have to consider first how much the exercise of the right to remain silent would be deterred if a suspect knew that a request for a lawyer could be used as evidence of his sanity. Not much, in our opinion. Few criminal defendants raise the defense of insanity. Fewer still, we imagine, are already planning their defense when first arrested, though Sulie may be one of them, since the victim's husband testified that Sulie had told him that it was easy to beat a murder rap with an insanity plea if you knew how to fool the doctors. The sophisticated suspect whose foresight makes him hesitate to ask for a lawyer because he is afraid that his request will undermine his insanity defense at trial does not need counsel present to protect his constitutional right to remain silent; such an advance planner will not blurt out damaging admissions involuntarily, merely because counsel is not present.

■ Against the slight inhibiting effect on the constitutional right of silence of permitting testimony that a criminal defendant requested counsel at his interrogation, we must weigh the value to the state of being able to show that, when interrogated soon after the crime, the defendant who now claims he was insane when he committed the crime was sufficiently lucid to ask for a lawyer. Under Indiana law at the time of Sulie's trial the prosecution had the burden of proving sanity beyond a reasonable doubt once the defendant raised the defense of insanity, *Riggs v. State,* 264 Ind. 263, 265, 342 N.E.2d 838, 841 (1976), and psychiatry is not such an exact science that it can be counted on to defeat every effort to feign insanity. The difficulty of reliably determining by the methods of litigation whether a criminal defendant is insane lies behind the principle that "the trial judge should be free in his admission of all possibly relevant evidence" on the issue of insanity. *United States v. Hartfield,* 513 F.2d 254, 260 (9th Cir. 1975). Although the prin-

ciple is usually invoked by defendants, to justify the admission of evidence of insanity, we cannot think of any good reason that it should not be available to the state to justify the admission of evidence of sanity, especially where the state has the burden of proving sanity beyond a reasonable doubt—a burden some might think virtually impossible to carry in any case of criminal, which implies aberrant, behavior. Evidence of a defendant's lucidity at or near the time of the crime may therefore be important in preventing erroneous acquittals on grounds of insanity, a legitimate and important social goal. That preventive effect must be weighed against the burden, which we have said is indirect, on the exercise of the Fifth Amendment right against compulsory self-incrimination.

■ All this is not to suggest that evidence that a criminal defendant asked for a lawyer when he was first questioned is admissible generally. Many decisions have held such evidence inadmissible. See, e.g., *Fagundes v. United States,* 340 F.2d 673, 677 (1st Cir. 1965); *United States v. Liddy,* 509 F.2d 428, 443–45 (D.C. Cir. 1974); *United States v. Williams,* 556 F.2d 65, 67 (D.C. Cir. 1977); *United States v. McDonald, supra,* 620 F.2d at 564; *People v. Schindler,* 114 Cal.App.3d 178, 186–87, 170 Cal.Rptr. 461, 465–66 (1980). We have no quarrel with any of these decisions except the last. *Schindler* alone involved the use of such evidence to prove sanity. Where evidence that the defendant asked for a lawyer is used to prove, not sanity, but, for example, guilt, its probative value is slight (it is not true that only a guilty person would want to have a lawyer present when he was being questioned by the police); but here it was great. Even so, we decline to adopt a rule of blanket admissibility. If the interrogation takes place months after the crime, an inference of sanity at the time of the crime, drawn from a request for counsel at the time of the interrogation, might well be too tenuous to warrant allowing the request into evidence, given that its admission could have some—though probably only slight—deterrent effect on the exercise of the defendant's right under the Fifth

Amendment to remain silent during a custodial interrogation. But in this case the interrogation came only 30 hours after the crime.

As so often in the law, it is all a matter of balancing competing values in particular circumstances. Here the balance sufficiently inclines in favor of admissibility to persuade us that the defendant's constitutional rights were not infringed. The judgment denying the petition for habeas corpus is therefore

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

If we were writing on a clean slate, I could find some common sense and plausibility in the majority's balancing analysis. I too see little to deter a request for a lawyer in the threat of subsequent use of the request to prove sanity. Perhaps, as the majority contends, the state has particular need for testimony about a defendant's request for a lawyer to show his lucidity. But there are also those who would argue that such a request is entirely consistent with lunacy. In any event, asking for a lawyer is not necessarily proof either of objective guilt or of sound mental condition.

Be that as it may, an analysis based on balancing deterrence of the constitutional right to counsel against the state's interest in testimony about seeking a lawyer is an approach clearly foreclosed to us by the Supreme Court. For the Court's decision in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), is basically contrary both to the majority's mode of analysis and to its holding. The ultimate constitutional right at issue here is, as the majority notes, the right to remain silent. The requirement of a *Miranda* warning (which advises a defendant of both the right to remain silent and the right to counsel) is a prophylactic rule designed to safeguard Fifth Amendment rights. *Michigan v. Tucker,* 417 U.S. 433, 443–44, 94 S.Ct. 2357, 2363–64, 41 L.Ed.2d 182 (1974). *Doyle* held that one response by a defendant to the *Miranda* warnings—remaining silent—could not be

used at trial against the defendant even for the limited purpose of impeaching the defendant's trial testimony. The Court offered two reasons for this result. First, a defendant's silence in the wake of these warnings is "insolubly ambiguous because of what the State is required to advise the person arrested." 426 U.S. at 617, 96 S.Ct. at 2244 (footnote omitted). That is, a defendant's silence may be nothing more than the exercise of the *Miranda* right to remain silent. Second, the Court observed that "while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." 426 U.S. at 618, 96 S.Ct. at 2245. For these reasons, the Court held that it would be fundamentally unfair and a deprivation of due process to allow a defendant's silence to be used at trial.

These same considerations apply when the defendant's response to the *Miranda* warnings is not silence but a request to contact a lawyer. Because the State is required under *Miranda* to advise an accused of both the right to remain silent and the right to counsel, exercise of the latter right is as "insolubly ambiguous" as the exercise of the former right. More importantly for my principal point, just as the *Miranda* warnings implicitly assure an accused that exercise of the announced right to silence will carry no penalty, so too must they implicitly give assurance that a defendant's exercise of the announced right to counsel will carry no penalty. Because the Court in *Doyle* was concerned not with the precise source of the particular rights contained in the *Miranda* warnings but rather with the inherent ambiguity of a defendant's exercise of those rights and, crucially,

with the assurances that implicitly accompany the *Miranda* warnings, the majority's attempt to distinguish *Doyle* must fail.[1]

In the course of dismissing *Doyle* as applicable precedent, the majority asserts, as I have indicated, that the proper mode of inquiry is to ask whether a defendant's exercise of the right to remain silent would be unnecessarily deterred if the State were permitted to use the exercise of the right as evidence at trial. The majority concludes that, at least in this case, the admission into evidence of the defendant's request for a lawyer would have only a "slight inhibiting effect" on the exercise of the constitutional right. *Ante* at 130. As an empirical matter, as I have suggested, this is probably an accurate assessment; under existing precedent, however, I do not believe that it is an assessment we are entitled to make. The "penalty" analysis of *Doyle* derives from the Supreme Court's decision in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which held that a prosecutor's comment to the jury concerning the defendant's failure to testify violated the Fifth Amendment privilege because it was "a penalty imposed by the courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." 380 U.S. at 614, 85 S.Ct. at 1232. *Griffin* holds broadly that, "at least in the criminal context, the relevant question is whether the particular *defendant* has been *harmed* by the State's use of the fact that he engaged in constitutionally protected conduct, not whether, for the particular defendant or for persons generally, the State's reference to such activity has or will *burden* the exercise of the constitutional right." *United States ex rel. Macon v. Yeager,* 476 F.2d 613, 616 (3rd Cir.), *cert.*

---

1. This reading of *Doyle* is confirmed by the Supreme Court's recent decision in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam). In *Fletcher,* the Court held that *Doyle* did not prohibit the use of the defendant's post-arrest silence for impeachment purposes where the defendant had not received *Miranda* warnings. The Court emphasized that it is only when the defendant receives "the sort of affirmative assurances embodied in the *Miranda* warnings," 102 S.Ct. at

1312, that the prosecution's use of post-arrest silence is fundamentally unfair. Thus, the key to the exclusionary rule of *Doyle* is the giving of *Miranda* warnings and not the constitutional source of the various rights announced in those warnings. Because the State's assurances concerning the defendant's right of silence and right to counsel are indistinguishable under the terms of the *Miranda* warnings, the *Doyle* rule must necessarily apply to both rights.

denied, 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973) (emphasis in original). In the case before us, it can scarcely be doubted that the defendant was penalized in this sense when the State used against him at trial on the issue of his sanity the fact that he asked to contact a lawyer.

Consequently, I think we have to interpret *Doyle* to forbid the prosecution from introducing into evidence the fact that the defendant exercised any of the rights contained in the *Miranda* warnings. There is no reason for failing to employ a penalty analysis in the case before us. By reading the defendant his *Miranda* rights, the State implicitly assured him that exercise of those rights would carry no penalty. The prosecution subsequently violated this assurance when it used the defendant's request for counsel against him to rebut his insanity defense and secure a guilty verdict. I appreciate the difficulties both of asserting and defeating the insanity defense, but I do

not see how we can balance the State's need for evidence of rationality against the placing of a penalty on the defendant's exercise of his right to counsel. For if the State's need for the challenged evidence is an appropriate factor to consider, constitutional rights would be honored only when their exercise is of no benefit to the accused. I am therefore compelled to conclude that the prosecution's use of the defendant's request to contact an attorney violated the Fifth Amendment as applied to the states under the Fourteenth Amendment.[2]

Although the question of harmless error seems close, I agree with the majority that the case before us is not controlled by *Jacks v. Duckworth,* 651 F.2d 480 (7th Cir. 1981), cert. denied, 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982), which emphasized the harmlessness of the error. Here, I believe, the error cannot be deemed harmless beyond a reasonable doubt, and I must, therefore, respectfully dissent.

**2.** The majority's holding that the defendant's Fifth Amendment rights were not infringed here is squarely in conflict with a number of decisions that have held that the Fifth Amendment (and, in state prosecutions, the due process clause of the Fourteenth Amendment) is violated when the prosecution is permitted at trial to show that the defendant asked to see a lawyer. *See, e.g., United States v. Williams,* 556 F.2d 65, 66–67 (D.C. Cir.) (per curiam), cert. denied, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977); *United States v. Faulkenbery,* 472 F.2d 879, 881 (9th Cir.), cert. denied, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973); *United States v. Nielsen,* 392 F.2d 849 (7th Cir. 1968); *People v. Schindler,* 114 Cal. App.3d 178, 170 Cal.Rptr. 461 (1980); *People v. Kennedy,* 33 Ill.App.3d 857, 338 N.E.2d 414 (1975). All of these cases involved custodial interrogations during which the defendant requested to speak with a lawyer, the same situation presented in this case.

Two other cases, cited by the majority, found similar requests to see a lawyer inadmissible without identifying the source of the constitutional right involved. *Baker v. U.S.,* 357 F.2d 11, 13 -14 (5th Cir. 1966); *Fagundes v. U.S.,* 340 F.2d 673, 677 (1st Cir. 1965). *Fagundes* relied principally on the Supreme Court's decision in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), a Sixth Amendment case that was superseded by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and subsequently limited to its particular facts, *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972);

*Johnson v. New Jersey,* 384 U.S. 719, 733–734, 86 S.Ct. 1772, 1781, 16 L.Ed.2d 882 (1966).

I also question the majority's dismissal of the defendant's Sixth Amendment claim. The majority claims that the Sixth Amendment right to the assistance of counsel has no bearing at all in this case because the explicit guarantees of that amendment had not yet attached at the time the defendant made his request for counsel. *See Moore v. Illinois,* 434 U.S. 220, 226–27, 98 S.Ct. 458, 463–64, 54 L.Ed.2d 424 (1977); *Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972). The majority's conclusion, however, is at odds with a long line of cases holding that an accused's attempt to contact a lawyer, even before arrest, may not consistently with the Sixth Amendment be used at trial to support an inference of guilt. *See, e.g., United States v. McDonald,* 620 F.2d 559, 564 (5th Cir. 1980); *Zemina v. Solem,* 438 F.Supp. 455, 466 (D.S.D. 1977), aff'd, 573 F.2d 1027 (8th Cir. 1978) (per curiam); *United States v. Liddy,* 509 F.2d 428, 443–45 (D.C. Cir. 1974) (en banc), cert. denied, 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975); *United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3rd Cir.), cert. denied, 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973). Because the exercise of the right to counsel in these cases came before the formal attachment of Sixth Amendment guarantees under *Kirby* and *Moore,* these decisions are necessarily in conflict with the majority's understanding of the Sixth Amendment.