**Edward Dennis JACKS, Jr.,
Petitioner–Appellant,**

v.

**Jack DUCKWORTH, Superintendent, Indiana State Prison, and Indiana Attorney General, Respondents–Appellees.**

**No. 87–1327.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 1987.

Decided Sept. 13, 1988.

Rehearing and Rehearing In Banc
Denied Nov. 2, 1988.

Julius Lucius Echeles, Chicago, Ill., for petitioner-appellant.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.*

MANION, Circuit Judge.

Jacks appeals the district court's decision to deny his third petition for a writ of habeas corpus. We affirm.

## I.

Edward Jacks, an Indiana arms dealer, returned from a business trip to Georgia upset that negotiations for a deal with a foreign government had fallen through. Upon returning, his wife informed him that she had filed for divorce and that she and the couple's two children had moved from the couple's house into an apartment. His wife subsequently returned to the house with the children to collect some clothing and belongings. Jacks greeted her at the front door with an assault rifle. She turned, trying to gather up the children as she fled. Jacks shot and killed her.

Jacks was charged with first degree murder and tried before a jury in the Superior Court of Elkhart County, Indiana. Jacks claimed that he was insane at the time of the shooting. The jury convicted Jacks of first degree murder and the trial court sentenced him to life in prison. He is currently incarcerated in Indiana.

---

* Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, Eastern Division, is sitting by designation.

Since being sentenced to life in prison, Jacks has launched several attempts to overturn his conviction. These attempts have included a direct appeal to the Indiana Supreme Court, three petitions for a writ of habeas corpus filed in the United States District Court for the Northern District of Indiana, an appeal filed in this circuit, an application for the issuance of a certificate of probable cause filed in this circuit, and a petition for a writ of certiorari filed in the United States Supreme Court. This continuing effort notwithstanding, Jacks remains incarcerated and he now appeals from the denial of his third petition for a writ of habeas corpus.

Jacks' numerous petitions and appeals have raised several constitutional grounds for overturning his conviction. Two of these grounds are relevant to the present appeal. The first ground concerns the admission of Jacks' post-*Miranda* warning request for an attorney as evidence of sanity. This request was part of a tape-recorded conversation between Jacks and Detective Sergeant Miller of the Elkhart County Sheriff's Department. At the beginning of the conversation, Sergeant Miller informed Jacks of his *Miranda* rights. Sergeant Miller and Jacks then engaged in a conversation concerning, among other things, Jacks' arms business. After talking about Jacks' business, the following colloquy took place:

[Sergeant] Miller: Do you know what has happened? Tonight?

Mr. Jacks: I'm not exactly sure what happened.

[Sergeant] Miller: You're not exactly sure. Have you been drinking?

Mr. Jacks: As regards whatever happened this evening, I want to talk to my attorney.

[Sergeant] Miller: Okay.

Miller and Jacks then continued their conversation but did not talk about the shooting.

At Jacks' criminal trial, the court allowed the state to introduce the initial portion of the taped conversation up to and including Jacks' statement that he wanted to talk to an attorney. The State introduced this por-tion of the taped conversation as evidence of Jacks' sanity at the time of the shooting, and in his closing argument, the prosecutor mentioned all the statements made by Jacks in this portion of the conversation, including Jacks' request for counsel. The trial court did not allow the remaining por-tion of the conversation to be admitted into evidence. See *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding that police must cease ques-tioning of arrested person after person in-vokes right to counsel). A transcript of the entire conversation is set forth in Appen-dices A and B to the majority opinion in *Jacks v. Duckworth,* 651 F.2d 480, 488–90 (7th Cir.1981), *cert. denied,* 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982). (For ease of reference, we refer to the opinion in Jacks' first appeal as *Jacks I.*) Jacks claimed that the admission of the initial portion of the taped conversation into evi-dence, and the prosecutor's comment on the evidence, unconstitutionally penalized the exercise of his rights to remain silent and to counsel.

Jacks' second ground of constitutional error involves the trial court's instructions to the jury. Jacks' challenge to the in-structions focused on State's Instruction No. 5, which stated:

You are instructed that where a specif-ic intent is required to make an act an offense, such as in the charge preferred against the Defendant, it is not always possible to prove a purpose by direct evidence, for purpose and intent are sub-jective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, in-cluding what was said and done in rela-tion thereto; bearing in mind the pre-sumption of law, that everyone is pre-sumed to intend the natural and probable consequences of his voluntary acts, un-less the circumstances are such as to indicate the absence of such intent.

When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in

the absence of justifying or excusing facts, since the law presumes a criminal intent from an unlawful act knowingly done.

*Jacks I,* 651 F.2d at 491. At the time of Jacks' trial, the burden was on the State to prove Jacks' sanity beyond a reasonable doubt. *See Riggs v. State,* 264 Ind. 263, 265, 342 N.E.2d 838, 841 (1976). Jacks claimed that the instruction's language that "everyone is presumed to intend the natural and probable consequences of his voluntary acts" and that the "law presumes a criminal intent from an unlawful act knowingly done" violated his due process rights by creating a mandatory presumption of intent that shifted the burden of persuasion on an essential element of the crime from the State to Jacks.

Jacks unsuccessfully raised both these grounds of error on direct appeal to the Indiana Supreme Court, *Jacks v. State,* 271 Ind. 611, 394 N.E.2d 166 (1979), and on his first petition for a writ of habeas corpus, *Jacks v. Duckworth,* 486 F.Supp. 1366 (N.D.Ind.1980). Jacks then appealed to this circuit.

On appeal, Jacks claimed that the introduction into evidence of his post-*Miranda* warning request to remain silent about the crime until contacting a lawyer and the prosecutor's comment on that evidence violated the rule set forth in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (holding that the use of post-*Miranda* warning silence as impeachment evidence against defendant violates due process), and *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (holding that prosecutor may not elicit evidence concerning defendant's post-*Miranda* warning silence). The court rejected this argument, concluding that neither *Doyle* nor *Hale* was applicable because Jacks had not, in fact, remained silent. The court indicated that Jacks' statement mentioning counsel should nonetheless have been kept out of evidence, but that the admission of that statement did not warrant overturning Jacks' conviction. In pertinent part the court reasoned:

Certainly the reading of this one sentence to the jurors after they had been read the considerable forepart of petitioner's conversation with Officer Miller would be lost in all the rest of the evidence rather than cause them to convict. The trial judge left it in merely to mark the termination of the permissible evidence and that which became impermissible, he thought, after defendant first sought counsel. While it might have been better practice to suppress the sentence, certainly it was not so prejudicial a ruling as to constitute reversible error in view of the strong case against petitioner.

651 F.2d at 483.

Jacks also claimed on his first appeal to this circuit that the trial court's jury instructions violated his due process rights by creating a mandatory presumption against him that shifted the burden of persuasion on the issue of intent from the State to Jacks. See *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (due process requires the State to prove every essential element of a crime beyond a reasonable doubt). The court disagreed. While recognizing that the instruction caused needless problems and should not be given in future cases, the court determined that the qualifying phrases in the instruction cured any problem with the "presumption" language. According to the court, the instruction did not contain a mandatory injunction to presume intent because "the jurors were told they could 'look to all the surrounding circumstances, including what was said and done in relation thereto' and that any presumption of 'a criminal intent from an unlawful act knowingly done'" existed only in the absence of "justifying or excusing facts." *Jacks I,* 651 F.2d at 485. The court also reasoned that the "qualifying phrase 'unless the circumstances are such as to indicate the absence of … intent' … nullified the mandatory flavor of the language condemned in *Sandstrom….*" *Id.* at 485–86. Moreover, after exhaustively analyzing all the jury instructions read to the jury, the court held that when read in their entirety the instructions made plain that the State

had the burden of persuasion on every essential element of the crime charged. *Id.* at 486–87. In any event, the court concluded, any error caused by the instructions was harmless.

After this court affirmed the district court's dismissal of Jacks' first habeas petition, the Supreme Court issued its decision in *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). In *Connecticut v. Johnson,* a plurality of the Court stated that *Sandstrom* error could be considered harmless only in "rare situations" such as when intent is conceded by the defendant. *See* 460 U.S. at 87, 103 S.Ct. at 977–78 (plurality). But see *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (holding that *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) standard for constitutional error applies to *Sandstrom* error). This prompted Jacks to file a second habeas petition claiming that the jury instructions at his trial unconstitutionally shifted the burden of proof and that such error could not be deemed harmless. The district court concluded that the petition did not raise any new issues and dismissed the petition under Rule 9(b) of the Rules Governing Section 2254 Cases. As an alternative holding, the district court reviewed the merits anew and held that *Connecticut v. Johnson* did not call into question the constitutionality of Jacks' conviction. The district court declined to issue Jacks a certificate of probable cause. *See* 28 U.S.C. § 2253.

Jacks then filed an application in the Seventh Circuit for the issuance of a certificate of probable cause. This circuit rejected the application stating:

> In consideration of the fact that this court [in *Jacks I,* 651 F.2d 480 (7th Cir. 1981)] has previously determined that the instructions did not unconstitutionally shift the burden of proof, and, in view of the fact that this court's harmless error analysis was an alternative holding, we find no substantive issue for review. Accordingly, the request for a certificate of probable cause is denied.

*Jacks v. Duckworth (Jacks II),* No. 83–3243 (7th Cir. March 29, 1984) (unpublished order denying application for certificate of probable cause).

Not satisfied with this circuit's previous dispositions of his case, Jacks filed a third petition for a writ of habeas corpus. This petition claimed that further review of his case was justified by recent decisions of the Supreme Court in *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (holding that post-*Miranda* warning invocation of *Miranda* rights could not be used as evidence of a person's sanity) and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (holding that jury instructions that could lead a reasonable jury to conclude that the defendant had the burden of proof on an essential element of a crime violates due process). Applying the "colorable showing of factual innocence" standard for successive habeas corpus petitions set forth in the plurality opinion in *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986), the district court denied the petition. This appeal followed.

II.

On appeal, Jacks raises the same constitutional claims that this circuit has previously rejected on the merits. These are that his due process rights were violated: (1) by the admission of his post-*Miranda* warning statement that he wished to remain silent about the shooting until contacting an attorney; and (2) by the trial court's jury instructions on the issue of intent. Accordingly, we must examine whether the district court properly refused to consider the merits of Jacks' third habeas corpus petition.

■ The doctrine of res judicata has no applicability in a habeas corpus proceeding. *Sanders v. United States,* 373 U.S. 1, 8–9, 83 S.Ct. 1068, 1073–74, 10 L.Ed.2d 148 (1963); *St. Pierre v. Helgemoe,* 545 F.2d 1306, 1307 (1st Cir.1976). Repetitive petitions for habeas corpus, however, are limited by 28 U.S.C. § 2244(b). This statutory provision states:

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

Consistent with § 2244(b), Rule 9(b) of the Rules Governing Section 2254 Cases provides:

**Successive petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

"As these provisions make clear, the law disfavors successive habeas petitions, and while the courts should consider them only in 'rare instances,' they do possess the 'discretion to entertain' successive petitions." *Jones v. Henderson*, 809 F.2d 946, 950–51 (2d Cir.1987) (quoting Advisory Committee Note to Rule 9(b) of the Rules Governing Section 2254 Cases).

The determination of whether a petitioner is precluded from relitigation on the merits of a previously rejected petition is made by resort to the three-step test set forth in *Sanders*. In *Sanders*, the Court stated that:

Controlling weight may be given to denial of a prior application for federal habe-

as corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted). *See also United States ex rel. Townsend v. Twomey*, 452 F.2d 350 (7th Cir.1971), *cert. denied*, 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972); *Jones v. Henderson*, 809 F.2d at 951.

Both grounds of constitutional error asserted in Jacks' third petition were raised and rejected in previous habeas corpus petitions. Thus, we focus on whether Jacks satisfied his burden of showing that the "ends of justice" warrant a fresh look at his claims. *Sanders*, 373 U.S. at 17, 83 S.Ct. at 1078 (petitioner has burden of establishing that "ends of justice" require reconsideration of the previously adjudicated claim); *Townsend*, 452 F.2d at 355 (same). We review a district court's determination on this issue for abuse of discretion. *Townsend*, 452 F.2d at 357.

The question of whether the "ends of justice" warrants redetermination of a previously adjudicated habeas corpus claim is not subject to any hard and fast rules. As the Court noted in *Sanders*, the "ends of justice" test is one that "cannot be too finely particularized." 373 U.S. at 17, 83 S.Ct. at 1078. Nonetheless, the Court did point out two general categories under which a petitioner could proceed. First, "[i]f factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair...." *Id.* at 16–17, 83 S.Ct. at 1078. Second, "[i]f purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." *Id.* at 17, 83 S.Ct. at 1078.

■ In *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), a

majority of the members of the Court expressly added another consideration to the "ends of justice" analysis, that is, whether the petitioner has made a "colorable showing of factual innocence." In *Kuhlmann*, a petitioner, whose claim had been rejected in a prior habeas corpus petition, sought relief on the ground that there had been an intervening change in the law. Justice Powell, writing for a four-member plurality, stated that "the 'ends of justice' *require* federal courts to entertain such petitions *only* where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." 477 U.S. at 454, 106 S.Ct. at 2627 (emphasis added). Although a majority of the members of the Court did not join in this portion of Justice Powell's opinion, Justice Stevens wrote separately and agreed with the plurality that a district court could properly take into account whether a petitioner set forth a " 'colorable claim of factual innocence.' " 477 U.S. at 476, 106 S.Ct. at 2639 (Stevens, J., dissenting). Justice Stevens departed from the plurality on this issue, however, in that he concluded that advancing a "colorable claim of innocence" was "not an *essential* element of every just disposition of a successive petition ...," but rather was "one of the facts that *may* properly be considered" in the "ends of justice" analysis. *Id.* (emphasis added). Thus, the common ground of the plurality decision and Justice Stevens' dissent is that a district court *may* take into account whether a successive petitioner established a "colorable showing of factual innocence" when determining whether a plaintiff has satisfied his burden of establishing that the "ends of justice" warrant relitigation of the merits. *See Jones*, 809 F.2d at 951–52.

While the exact contours of the "colorable showing of factual innocence" standard have yet to be precisely defined, it appears that Jacks has made such a showing in this case. Throughout the history of this case, Jacks has contended that he was legally innocent by reason of insanity. To this end, he introduced a fairly significant amount of probative evidence, including testimony from two experts that he was insane at the time of the shooting. If the

jury was persuaded by this evidence, Jacks' insanity defense would have been as complete a defense as if he had proved he was in a foreign country on the day of the shooting. *See Riggs v. State*, 264 Ind. 263, 265, 342 N.E.2d 838, 841 (1976). And both his claims of constitutional error go to issues directly related to the jurors' consideration of his insanity defense. We need not reach any definitive resolution of this issue, however, because Jacks' petition was properly dismissed whether or not he presented a "colorable showing of factual innocence." Jacks claims that the "ends of justice" warrant a redetermination of his claims because intervening changes in the law establish the unconstitutionality of his conviction. As we explain below, however, there have been no intervening changes in the law that call into question the constitutionality of his conviction.

### A. *Doyle* Error.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that the state violated a criminal defendant's due process rights by using the defendant's post-*Miranda* warning silence for impeachment purposes against him at trial. The Court gave two reasons for this holding. First, the Court stated that a person's decision to remain silent after being advised of his *Miranda* rights is "insolubly ambiguous" evidence. *Id.* at 617, 96 S.Ct. at 2244. Second, and most important, the Court stated that using a person's post-*Miranda* warning silence against him for impeachment purposes would be fundamentally unfair given that the *Miranda* warnings carry with them an implicit assurance that a person will not be penalized at trial for the exercise of those rights.

After *Doyle*, there was a conflict among the circuits as to whether a criminal defendant's post-*Miranda* warning exercise of *Miranda* rights could be introduced at trial as evidence of the person's sanity. This circuit held that a person's post-*Miranda* warning request for counsel soon after the commission of the crime was admissible to show the defendant's sanity at the time he committed the crime. *See Su-*

lie v. Duckworth, 689 F.2d 128 (7th Cir. 1982), cert. denied, 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983). Accord United States v. Trujillo, 578 F.2d 285 (10th Cir.), cert. denied, 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978). Other courts came to a contrary conclusion. See Greenfield v. Wainwright, 741 F.2d 329 (11th Cir.1984), aff'd, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); State v. Burwick, 442 So.2d 944 (Fla.1983), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984). Accord Sulie, 689 F.2d at 131–33 (Cudahy, J., dissenting).

The Supreme Court resolved this conflict in Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). In Wainwright, the Court held that a criminal defendant's post-Miranda warning request to talk to an attorney before making any statement could not be used at trial as evidence of the defendant's sanity.

> The point of the Doyle holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the State gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.

Id. at 292, 106 S.Ct. at 639. In addition to resolving the issue of whether the exercise of Miranda rights could be used as evidence of sanity, the Court emphasized in a footnote that Doyle "silence" was broader than mere muteness but also included statements that expressed a desire to remain silent, "as well as of a desire to remain silent until an attorney has been consulted." Id. at 295 n. 13, 106 S.Ct. at 641 n. 13.

■ Under Wainwright, there is no doubt that the admission of Jacks' statement that "[a]s regards whatever happened this evening, I want to talk to my attorney," constituted a due process violation. It is equally clear that Wainwright v. Greenfield constitutes an "intervening change in the law" as applied in this circuit. This "intervening change in the law," however, does not affect the validity of Jacks' conviction. While Sulie held that the use of a post-Miranda warning request for counsel as evidence of sanity was constitutionally permissible, Sulie was not decided until after this circuit affirmed the denial of Jacks' first habeas corpus petition. On the appeal of the denial of the first habeas petition, this circuit indicated that the challenged statement should have been excluded but determined that any possible error was harmless. See Sulie, 689 F.2d at 129 ("[Jacks I, 651 F.2d at 482–83] lays heavy emphasis on the harmlessness of the alleged error in the circumstances of that case, and we are less certain that if there were error here it was harmless.").

In an attempt to avoid the harmless error holding of Jacks I, Jacks relies heavily upon the fact that Jacks I held that no Doyle violation occurred because Jacks did not remain silent after being given the Miranda warnings. Wainwright v. Greenfield now makes clear that a statement that a person does not wish to speak until an attorney has been consulted also constitutes "silence" under Doyle. Thus, in light of Wainwright v. Greenfield, Jacks' statement can be viewed as implicating both his right to remain silent and his right to consult counsel. This does not, however, alter Jacks I's harmless error analysis.

■ The fact that Jacks' post-Miranda warning statement implicated his right to silence as well as his right to counsel is simply another ground to keep out the same statement. It does not impact on the harm actually caused him by the statement's admission. Moreover, assuming that it would be appropriate to revisit the harmless error analysis on this issue, our conclusion would be no different. The ad-

mission into evidence of the challenged statement was harmless beyond a reasonable doubt. See *Fencl v. Abrahamson*, 841 F.2d 760 (7th Cir.1988). Jacks' statement that "[a]s regards whatever happened this evening, I want to talk to my attorney," was simply one of many lucid statements made by Jacks in the portion of the taped conversation admitted into evidence. In addition, the prosecutor did not dwell on this statement in closing argument but rather mentioned the statement along with all the other statements made in the admitted portions of taped conversation. More important, the taped conversation was simply a small portion of a large amount of evidence going to the issue of Jacks' sanity. The State presented the testimony of eleven lay witnesses that indicated that Jacks was sane before, during, and after the shooting. Two experts testified that in their opinions, Jacks was sane and capable of forming the requisite criminal intent at the time of the shooting. An electroencephalogram technologist testified that, upon his return for a second electroencephalogram, Jacks told her that the first test did not show his insanity as his counsel had hoped and that he did not want to go along with an insanity defense. To counter the State's case, Jacks presented a considerable amount of probative evidence designed to show he was insane at the time of the shooting, including his own testimony and the testimony of two experts who testified that, in their opinions, Jacks was incapable of forming the requisite criminal intent. Jacks also argued that much of the State's evidence reinforced this conclusion. In short, the challenged statement was a small part of a taped conversation which was in turn a small part of the entire evidence on the issue of insanity. While it was error to admit the statement, its admission was harmless error.

B. *Sandstrom* Error.

█ Jacks' second ground for seeking habeas corpus relief is that the trial court's instructions unconstitutionally shifted the burden of proof on an essential element of the crime from the State to Jacks. See *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). As discussed earlier, this contention was rejected by this circuit in *Jacks I*, 651 F.2d at 485–87. Because of *Jacks I's* disposition of this issue, this circuit subsequently denied Jacks' application for a certificate of probable cause to appeal the district court's denial of Jacks' second habeas petition. Nonetheless, Jacks comes before us a third time on this same issue. According to Jacks, the Supreme Court's decision in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) "should serve to convince this Court that the majority in [*Jacks I*] was wrong with respect to whether the instructions complained of shifted the burden of proof." Appellant's Brief at 23. We disagree.

In *Francis*, a state prisoner sought habeas corpus relief on the ground that the trial court's instruction to the jury violated the due process requirement that a state prove every element of a crime beyond a reasonable doubt. The challenged jury instructions stated that: "(1) '[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted'; and (2) '[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.'" 471 U.S. at 309, 105 S.Ct. at 1968. The Supreme Court stated that, unless corrected by other instructions, these instructions violated due process because they created a mandatory rebuttable presumption on the issue of intent that shifted the burden of persuasion on the intent issue to the defendant. *Id.* at 318, 105 S.Ct. at 1973. The Court then examined the rest of the jury instructions in that case to see if the other instructions sufficiently clarified the prosecution's burden so that a reasonable juror could not have understood the challenged instructions to have shifted the burden of persuasion to the defendant. Finding that the other instructions did not, the Court held that the prisoner's due process rights were violated.

Despite Jacks' arguments to the contrary, *Francis v. Franklin* does not consti-

tute an intervening change in the law warranting relitigation of his claim. As the Court noted in its opinion, *Franklin* did not extend prior law, but rather involved the application of the principles set forth in *Sandstrom* to the circumstances of that case. 471 U.S. at 317 n. 5, 105 S.Ct. at 1973 n. 5. Nor did *Franklin* deviate from the Court's well-settled precedent that the constitutionality of particular instructions are not reviewed in isolation but rather are examined in the context of all the instructions given to the jury. *See Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

While certainly not to be emulated, the challenged instruction around which Jacks centers his argument, State's Instruction No. 5,[1] is different from those found unconstitutional in *Sandstrom* and *Francis.* As *Jacks I* noted, State's Instruction No. 5 contained qualifying language that "nullified the mandatory flavor of the language condemned in *Sandstrom....*" 651 F.2d at 485–86. The instruction told the jury that they could look to all the surrounding circumstances and that the "presumption" existed only for "voluntary acts" and "unlawful act[s] ... proved to be knowingly done." The "presumption" language was further qualified by the phrases "unless the circumstances ... indicate the absence of such intent" and "in the absence of justifying or excusing facts...." Jacks claimed he was insane at the time of the shooting, so that none of his acts could be

considered "knowing" or "voluntary." Furthermore, if the jury believed the slightest shred of his evidence concerning the surrounding "circumstances" or "justifying or excusing facts" there was no "presumption" under the instruction even for a "knowing" or "voluntary" act. *See Dean v. Young,* 777 F.2d 1239, 1244 (7th Cir. 1985) (construing similar instruction as constitutional under *Francis* where defendant claimed to be under the influence of LSD at time of the crime), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1794, 90 L.Ed.2d 339 (1986). On the other hand, if the jury did not believe any of the evidence of insanity, Jacks essentially had no defense to the government's overwhelming case. *See id.*

Moreover, any possible ambiguity in State's Instruction No. 5 was cleared up when placed in the context of the entire instructions read to the jury. As the court explained in *Jacks I:*

[T]he trial court read 34 instructions to the jury. In reading the indictment in Court Instruction No. 1 as to first degree murder, of which Jacks was ultimately convicted, the court noted that the grand jury indicted petitioner for "unlawfully, feloniously, *purposely* and maliciously, and with premeditated malice" murdering his wife. He told the jurors in his Instruction No. 2 that the burden was upon the State "to prove all of the material allegations of the indictment, beyond a reasonable doubt."

---

1. On this appeal, Jacks also complains that another instruction given at trial, Court's Instruction No. 13, violated his due process rights. Like State's Instruction No. 5, Court's Instruction No. 13 contained language referring to an individual presuming "to intend the natural consequences of his acts." *See Jacks I,* 651 F.2d at 490. *Jacks I,* however, held that Jacks waived his right under Indiana law to object to that instruction and is barred from seeking habeas relief on that ground by his failure to show cause for and prejudice from his failure to object at trial. *See Jacks I,* 651 F.2d at 485. Jacks tries to make an end run around that ruling by stating that *Jacks I* improperly refused to consider that instruction as part of the "context" for examining any error caused by State's Instruction No. 5. Jacks ignores the court's alternative holding in *Jacks I* that any error in Court's Instruction No. 13 was cured by another of the trial court's instructions.

Jacks further contends on this appeal that the State's Instruction No. 4 constituted error under *Francis.* Jacks, however, does not bother to enlighten us as to why this instruction violated his constitutional rights. We are left to assume that his objections are to language in the instructions that "when considering a defense to criminal responsibility ... there must be a showing that the" defendant was insane. *See Jacks I,* 651 F.2d at 490. Such undeveloped arguments are deemed waived on appeal. In any event, we find no reversible error in the instructions. State's Instruction No. 4 made clear that in order to be criminally responsible a person had to be sane. Moreover, the trial court made plain to the jury that the State had the burden of proving Jacks' sanity beyond a reasonable doubt. *See Jacks I,* 651 F.2d at 487.

In his Instruction No. 3, he read the Indiana statute defining murder in the first degree as applying to "Whoever purposely and with premeditated malice ... kills any human being." Then the court read its Instruction No. 4 that "a Defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted."

*In the Court's Instruction No. 5, jurors were told that in order to find petitioner guilty of murder in the first degree, the State must establish by proof "beyond a reasonable doubt that the crime charged against the Defendant was committed by him purposely and with premeditated malice" and that "purposely" means intentionally and designedly. The Court's Instruction No. 12 advised the jury that the use of a deadly weapon does not necessarily imply the requisite malice "unless such deadly weapon was intentionally used in such a manner as was calculated to or was likely to cause death...."*

Again, in Court's Instruction No. 14, the jury was advised that the jurors must "endeavor to reconcile all the evidence in the light of the presumption of innocence, if it is possible so to do," and that the presumption of innocence alone "is sufficient to acquit a Defendant, unless you are satisfied beyond a reasonable doubt of the Defendant's guilt from all the evidence in the case."

In Court's Instruction No. 15, the jurors were reminded that the burden of proof was upon the State "to prove the Defendant guilty beyond a reasonable doubt" and that "the evidence in the case must produce in your own mind such a firm belief of guilt that you would be freely willing to act upon that belief in any matter of the highest concern and importance to your own dearest interest." *They were also told that because of defendant's plea of not guilty by virtue of unsound mind, the burden was upon the State "to prove beyond a reasonable doubt that the Defendant*

*was sane at the time the crime charged was committed"* (Court's Instruction No. 18).

*The Court's Instruction No. 20 further protected this petitioner because the jury was instructed that a person must be found not guilty even if "he had the mental capacity to appreciate the wrongfulness of his conduct" if at that time his mind was "so affected as a result of mental disease or defect that he lacked substantial capacity to conform his conduct to the requirements of law."*

651 F.2d at 486–87 (emphasis added). In short, *Francis* involved the application of the same principles applied in *Jacks I* to a different set of jury instructions. *Francis* does not constitute an intervening change in the law calling into question the constitutionality of Jacks' conviction.

Accordingly, the district court's decision dismissing Jacks' third habeas corpus petition is

AFFIRMED.