**UNITED STATES ex rel. Thomas VANDA, Petitioner,**

v.

**Michael LANE, et al., Respondents.**

**No. 87 C 10796.**

United States District Court,
N.D. Illinois, E.D.

March 11, 1991.

Stephen J. Connolly, Connolly & Ekl, Clarendon Hills, Ill., for petitioner.

Terence Madsen, Asst. Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before the court are the respondents' objections to Magistrate Judge Weisberg's Report & Recommendation ("Report") as to the respondents' motion to dismiss or for summary judgment as to Thomas Vanda's ("Vanda") petition for a writ of habeas corpus. The Magistrate Judge recommended that the respondents'

motions be denied and that the court grant the petition for a writ of habeas corpus, because the prosecution impermissibly commented on Vanda's post-*Miranda* request for an attorney to prove his sanity. *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966). For the reasons set forth below, the court sustains the objections and denies the petition. Accordingly, respondents' motion to dismiss or for summary judgment is stricken as moot.

## I. FACTS

On April 29, 1977, Vanda murdered Marguerita Bowers ("Bowers") in her Oak Park, Illinois apartment with a hunting knife. Vanda met Bowers through a bible study group, to which Bowers and her roommate, Esther Gute ("Gute"), belonged. Vanda had been to Bowers and Gute's apartment before, for group meetings. Gute moved out of the apartment approximately one week before the murder took place. Bowers also was preparing to move at the time of the murder.

At six o'clock in the evening of April 29, 1977, one of Bowers' neighbors noticed Vanda standing outside Bowers' apartment and asked him what he wanted. Vanda replied that he was waiting for the women who lived there. Vanda waited for a couple of hours and spoke to several more people, all of whom believed Vanda's behavior appeared normal. Bowers returned home after eight o'clock that evening and at approximately 8:30 p.m., neighbors heard her screaming and called the police. The police apprehended Vanda as he emerged from the building and he told them "she's downstairs." Vanda acted rationally with both the police and the medical personnel, who tended a cut Vanda had on his hand. Vanda told police that he did not want to talk to them until he spoke to his lawyer, Ron Menaker, a public defender, who had previously successfully asserted an insanity defense on behalf of Vanda for the murder of a fifteen-year old girl,

also by stabbing. Menaker could not be reached that night and Vanda eventually asked to speak with an assistant state's attorney and confessed to the killing.

At trial, Vanda asserted an insanity defense and the State introduced the testimony of two state's attorneys, over objection, that Vanda refused to speak to the police until he spoke to his attorney.[1] The state's attorneys also testified as to Vanda's demeanor and behavior after he was taken into custody. One of the state's attorneys testified that Vanda was silent after he was given his *Miranda* warnings and the prosecutor commented on that testimony during his closing argument.

Both Vanda and the state presented expert testimony as to Vanda's mental state. Vanda presented the testimony of Dr. Edward J. Kelleher ("Kelleher"), who diagnosed Vanda as suffering from chronic undifferentiated schizophrenia and stated that his diagnosis would not change even if Vanda requested a lawyer at the time of his arrest. Kelleher also found that the disease had an organic substrata, because of Vanda's alleged history of headaches, dizzy spells, high fevers as a child, learning difficulties and abnormal electroencephalograms. Vanda also offered the testimony of Dr. Thomas Benton ("Benton"), who diagnosed Vanda as suffering from either schizophrenia or epilepsy related to organic brain abnormality. Benton stated that a person suffering from schizophrenia could appear to be normal. Vanda also presented the testimony of Dr. Frank M. Lorimer ("Lorimer"), who diagnosed Vanda as suffering from organic brain syndrome nonpsychotic with epilepsy due to brain abnormality.

The State called Dr. John R. Hughes ("Hughes"), who rebutted Lorimer's testimony that Vanda suffered from epilepsy. The State also called Dr. Charles Emerson ("Emerson") and Dr. Bruce T. Volpe ("Volpe"), who also rebutted Lorimer's testimony. Dr. James L. Cavanaugh ("Cava-

---

1. The defense filed a motion *in limine* to exclude the testimony of the assistant state's attorney, who testified that the defendant requested an attorney after being read his *Miranda* rights.

Although the trial court denied the motion, the judge instructed the jury that the evidence should be considered only to establish the defendant's state of mind.

naugh") and Dr. Richard Rogers ("Rogers"), both found that Vanda was not suffering from schizophrenia. Rogers diagnosed Vanda as suffering from intermittent explosive personality disorder, which Rogers testified does not qualify as a mental disease or defect under the Illinois standard of insanity. Cavanaugh also found no evidence of organic brain syndrome and diagnosed Vanda as exhibiting antisocial or sociopathic personality disorder, which also is not a mental disease or defect under the Illinois standard of insanity.

Both the prosecution and the defense also presented other non-expert testimony on the issue of Vanda's sanity. The defense presented the testimony of Vanda's mother, who said that Vanda had an abnormal childhood. Vanda had fantasies about being a policeman or a fireman and spent his spare time hanging around fire stations, until he was told to stay away. During high school, Vanda was charged with impersonating a police officer and was required to submit to psychiatric care. The jury also heard that Vanda murdered another girl and successfully asserted an insanity defense.

The State presented the testimony of Dale Tweedy ("Tweedy"), who counseled Vanda while Tweedy was the chaplain at the Cook County Jail, when Vanda was being held for the earlier murder. Tweedy also counseled Vanda after he was transferred to the Madden Mental Health Center ("Madden") and after his release from Madden. He spoke to Vanda twice by telephone during the week before Bowers' murder. Tweedy testified that Vanda appeared fine and was rational. Tweedy also spoke to Vanda the night of the murder. Vanda called Tweedy from the police station and said "I did it again" and "I had a bad night."

Also, Christine Tomasik, a member of the bible study group to which Vanda and Bowers belonged, testified that Vanda appeared sane and rational at bible group meetings. Finally, Thomas Spaulding, Vanda's cellmate at Cook County Jail, said that Vanda told him that he was going to

plead insanity and Vanda gave Spaulding a letter entitled "How to beat a murder rap by insanity." The letter suggested that a defendant should exhibit certain behavior to support the insanity defense, including laughing hysterically, masturbating in front of clinical staff and claiming to hear voices telling him to do the murder. The jury found Vanda guilty and he was sentenced to 300 to 500 years imprisonment.

## II. PROCEDURAL HISTORY

Vanda argued before the Illinois Appellate Court that the testimony that he requested a lawyer, even when considered only for a limited purpose, violated the Fifth Amendment against self-incrimination and the Fourteenth Amendment Due Process Clause. The Illinois Appellate Court held that while there was constitutional error in the admission of the evidence and the prosecution's comments during closing argument referring to the testimony, the error was harmless beyond a reasonable doubt, because "there was an exhaustive amount of evidence on both sides of the insanity issue ... [and the evidence did not] have a significant impact upon the minds of the jury." *People v. Vanda,* 111 Ill.App.3d 551, 559, 67 Ill.Dec. 373, 386, 444 N.E.2d 609, 624 (1st Dist. 1982), *citing Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Vanda filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on April 12, 1983. The United States Supreme Court denied Vanda's petition for a writ of certiorari on October 3, 1983. Vanda then filed the instant petition for a writ of habeas corpus. Vanda raises the following issues in this court:

(1) The State infringed upon Vanda's Fourteenth Amendment Due Process rights when his post-arrest request for an attorney was used as evidence of his sanity.

(2) The State violated Vanda's Fifth Amendment right against self-incrimination, when the state alluded to Vanda's silence to prove his sanity.[2] (Petition, p. 2)

---

**2.** Vanda also initially raised another claim that    his Sixth Amendment right·to counsel was de-

The State filed a motion to dismiss or for summary judgment, which, along with the petition itself, this court referred to Magistrate Judge Weisberg. Magistrate Judge Weisberg recommended that the court deny the State's motion and that the court issue a writ of habeas corpus. The State filed an objection to the Report's conclusion that the court should apply *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), retroactively. The State declined to address any of the other arguments raised in its motion, stating only that:

> Regarding all other aspects of the magistrates (sic) report, including an in depth analysis of retroactivity prior to *Teague* [*v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)], Respondent incorporates all previous filings, specifically Respondent's (sic) Motion to Dismiss or for Summary Judgment With Supporting Memorandum of Law ... Respondent would specifically bring to this Court's attention their procedural default claims which were rejected by the Magistrate. (Objections, p. 1)[3]

## III. DISCUSSION

### A. *Procedural Default*

██ The court first addresses the State's procedural default argument. The State argues that Vanda failed to raise the argument that the State commented on the exercise of his post-*Miranda* right to remain silent before the Illinois Appellate Court. The court agrees with the Magistrate Judge that Vanda did "fairly present" this claim within the meaning of *Cruz v. Warden of Dwight Correctional Center*, 907 F.2d 665 (7th Cir.1990). "A habeas petitioner has 'fairly presented' a claim to a state court if he has clearly informed the state court of the factual basis for that

claim and has argued to the state court that those facts constituted a violation of the petitioner's constitutional rights." *Cruz*, 907 F.2d at 667 (citation omitted). Vanda argued to the Illinois Appellate Court that the state's attorneys' testimony that Vanda refused to give a statement to them until he spoke to his lawyer violated Vanda's constitutional rights. That same testimony forms the basis of Vanda's claim here. The Illinois Appellate Court found that the use of this testimony to prove Vanda's sanity was "an even more repugnant penalty to the defendant for exercising his constitutional rights" than in *Doyle*, because it was done for a substantive purpose and not mere impeachment. *Vanda*, 111 Ill.App.3d 551, 67 Ill.Dec. 373, 444 N.E.2d 609 (1st Dist.1982). Accordingly, the court finds that Vanda did not procedurally default his claim that the prosecution impermissibly commented on his post-*Miranda* silence.

### B. *Application of Greenfield*

The substantive basis of Vanda's petition for a writ of habeas corpus stems from the United States Supreme Court's holding that a criminal defendant's post-*Miranda* silence and request for an attorney could not be used to prove the defendant's sanity. *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *citing People v. Vanda*, 111 Ill.App.3d 551, 67 Ill.Dec. 373, 444 N.E.2d 609 (1st Dist.1982). Following the *Greenfield* decision, the Seventh Circuit held in *Sulie v. Duckworth*, 864 F.2d 1348 (7th Cir.1988), that *Greenfield* applies retroactively, even to cases on collateral review.

██ The Supreme Court, however, limited federal court, collateral jurisdiction over habeas corpus petitions in *Teague v. Lane*,

---

nied both because the state introduced evidence of his post-arrest request for an attorney and because the state failed to provide an attorney before further questioning. The court granted Vanda's motion to voluntarily strike the portion of the petition relating to the failure to provide an attorney.

**3.** Ordinarily, this statement would be insufficient to preserve the State's objection. Litigants

are only entitled to *de novo* review of those portions of the Report to which they make specific objection. 28 U.S.C. § 636(b). At a bare minimum, the party must also inform the court as to the basis of his or her objection. It is not enough to incorporate by reference all previous filings. The court, however, addresses the petition *de novo*, because of the novelty of the issues and the gravity of the underlying facts.

489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which held that a new constitutional rule of criminal procedure should not be applied retroactively to decisions which are already final. There are two exceptions to the *Teague* holding, which allow retroactive application. The first exception is where a new rule places a class of private conduct beyond the power of the State to proscribe. The second exception arises where the new rule is a "watershed rule of criminal procedure," which implicates the fundamental fairness of the criminal proceeding. *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990). Neither the petitioner nor the State argue that either exception is at issue. Rather, the controversy here focuses on whether *Greenfield* enunciated a "new rule" for purposes of *Teague*.

In *Thomas v. Indiana*, 910 F.2d 1413 (7th Cir.1990), also a case involving an insanity defense, the state introduced evidence of the defendant's post-arrest silence, not a request for an attorney. The Seventh Circuit questioned the continued viability, following *Teague,* of its holding in *Sulie v. Duckworth*, 864 F.2d 1348 (7th Cir.1988), that *Greenfield* had retroactive application. The court did no more than raise the issue, however, because it found that the state waived the issue of retroactive application of the *Greenfield* decision. Moreover, the *Thomas* court also concluded that, retroactive application was not at issue, as *Doyle* already implicitly dictated that post-arrest silence could not be used for any purpose, including impeachment of an insanity defense. *Thomas*, 910 F.2d at 1416. Accordingly, the Seventh Circuit reasoned that the *Greenfield* Court's holding that the defendant's post-arrest silence could not be used as evidence of the defendant's sanity was not a "new rule" within the meaning of *Teague* and accordingly, could be applied in the habeas proceeding. *Id.* Thus, the issue of whether the request for an attorney aspect of the *Greenfield* Court's ruling is a "new rule" within the meaning of *Teague* is one of first impression in this Circuit.

There appear to be three potential factual categories of cases raising the issue of retroactive application of *Greenfield.* The first is the case in which the defendant merely exercises his right to remain silent. The *Thomas* court characterized those facts as "pure silence" and determined retroactive application of *Greenfield* to be appropriate, noting that: "neither of the lower-court cases that the Supreme Court cited in *Greenfield* to show that some courts had thought *Miranda* and *Doyle* inapplicable to the use of silence to prove sanity was a case of pure silence." *Thomas*, 910 F.2d at 1416. The second category of cases arises where the evidence demonstrates that the defendant not only refused to speak, but also requested an attorney. This case and *Greenfield* fall into the second category. Finally, the third category of cases are those cases in which the defendant simply requests an attorney. The argument that *Greenfield* enunciated a new rule carries more weight as to this last category of cases. As the Seventh Circuit noted in *Thomas*, the split among the circuits resolved by *Greenfield* resulted not from disagreement as to cases of pure silence, but rather request for attorney cases. *Greenfield*, 474 U.S. 284, 289, 106 S.Ct. 634, 637, 88 L.Ed.2d 623 (1986). In *Sulie v. Duckworth*, 689 F.2d 128, 130 (7th Cir.1982), *cert. denied* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983), a simple request for counsel case, the Seventh Circuit held, prior to *Greenfield*, that the defendant's request for counsel could be used as evidence of his sanity without any violation of the defendant's *Miranda* rights. *See also United States v. Trujillo*, 578 F.2d 285 (10th Cir.1978), *cert. denied* 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978) (silence and request for counsel); *contra Greenfield v. Wainwright,* 741 F.2d 329 (11th Cir.1984), *aff'd* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *State v. Burwick*, 442 So.2d 944 (Fla.1983), *cert. denied* 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984) (silence and request for counsel). Following *Greenfield*, the Seventh Circuit stated: "[i]t is equally clear that *Wainwright v. Greenfield* constitutes an 'intervening change in the law' as applied in this

circuit." *Jacks v. Duckworth,* 857 F.2d 394, 401 (7th Cir.1988). Moreover, in the *Greenfield* decision itself, the concurrence stated:

> But a request for a lawyer may be highly relevant where the plea is based on insanity. There is no 'insoluble ambiguity' in the request; it is a perfectly straightforward statement tending to show that an individual is able to understand his rights and is not incoherent or obviously confused or unbalanced.

*Greenfield,* 474 U.S. at 297, 106 S.Ct. at 642. This court's review of the relevant precedent requires the conclusion that *Greenfield* enunciated a new rule within the meaning of *Teague* as to the use of evidence of a simple request for an attorney to prove sanity. Thus, as to that aspect of Vanda's argument, the petition is denied. The prosecution's comment and the testimony as to Vanda's silence, however, violated Vanda's constitutional rights under *Doyle.* The court finds, however, under the facts of this case, that the violation of Vanda's rights was harmless error beyond a reasonable doubt as is more fully addressed below.

### C. *Harmless Error*

■ Although the Illinois Appellate Court held that the admission of evidence relating to Vanda's exercise of his *Miranda* right to remain silent violated Vanda's constitutional rights, the court also found the error to be harmless. *People v. Vanda,* 111 Ill.App.3d 551, 67 Ill.Dec. 373, 382–83, 387, 444 N.E.2d 609, 618–20, 624 (1st Dist.1982). The court applied the standard enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which applies to review of constitutional errors occurring during trial, and held the error harmless beyond a reasonable doubt, because of the length of the trial and the exhaustive amount of evidence on both sides of the insanity issue. *Chapman* requires the court to determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827 (citation omitted). In *Savory v. Lane,* 832 F.2d 1011, 1018 (7th Cir.1987), the Seventh Circuit noted that the inquiry as to whether a constitutional error is harmless beyond a reasonable doubt is an issue of federal law and any state court finding may not be accorded the presumption of correctness under 28 U.S.C. § 2254(d). The district court may, however, apply the presumption to the state court's "subsidiary factual determinations" as long as the other conditions of the statute are met. *Savory,* 832 F.2d at 1019; 28 U.S.C. § 2254(d). The Illinois Appellate Court did not set forth its subsidiary factual determinations. The Court said:

> While we tread very lightly in the area of an individual's constitutional rights, we think that the error committed here was harmless beyond a reasonable doubt. Again, where this evidence was isolated in a lengthy trial and there was an exhaustive amount of evidence on both sides of the insanity issue, we do not believe this evidence had a significant impact upon the minds of the jury. *Vanda,* 67 Ill.Dec. at 387, 444 N.E.2d at 624.

Accordingly, we assess the error *de novo.*

■ The court notes that the prosecution's reference to Vanda's *silence* occurred only once during the trial. (R.1401) That reference occurred during the State's direct examination of assistant state's attorney, Irving Miller, ("Miller"). Miller gave the following testimony:

> **Mr. Kane:** Did you ask Mr. Vanda if he understood those rights? ...
>
> **Miller:** Yes I did ...
>
> Q: At that point what did Mr. Vanda say if anything?
>
> A: He indicated to me before he would say anything he wanted to speak to a lawyer.

All other references to Vanda's response to his *Miranda* rights emphasized Vanda's request for counsel and did not directly mention his silence.

Finally, the evidence introduced as to Vanda's sanity was extensive. Vanda and the State presented the testimony of eight expert witnesses as to Vanda's mental condition. The other evidence as to Vanda's sanity was also extensive, including testi-

**1258**

mony relating to his early childhood and the letter he authored on the insanity defense while incarcerated at Cook County Jail. Accordingly, the court finds that the prosecution's reference to Vanda's post-*Miranda* silence was harmless error beyond a reasonable doubt.

## IV. CONCLUSION

For the reasons set forth above, the respondents' objections to the Magistrate's Report are sustained and Vanda's petition for a writ of habeas corpus is denied. The respondents' motion to dismiss or for summary judgment is stricken as moot.